# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CRUM & FORSTER SPECIALTY INSURANCE COMPANY<br><br>Plaintiff,<br><br>v.<br><br>RIVER PLAZA HOMEOWNERS ASSOCIATION, ESTHER GEPPERT, PK AGRAWAL, JIM BURKE, CHERI LUNDIN, CARY ENDLICH, JOAN LONG, RON HALE, MARK OBERROTMAN, GARY OKRUSKO and SEAN FLYNN,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No.: 1:24-cv-3906<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Crum & Forster Specialty Insurance Company ("CFSIC"), by and through its undersigned counsel, as and for its Complaint for Declaratory Judgment against River Plaza Homeowners Association ("River Plaza"), Esther Geppert, PK Agrawal, Jim Burke, Cheri Lundin, Cary Endlich, Joan Long, Ron Hale, Mark Oberrotman, Gary Okrusko, and Sean Flynn, states as follows:

## NATURE OF THE ACTION

1. In this action, CFSIC seeks a determination of its rights and obligations under an insurance policy issued to River Plaza in connection with the Underlying Action (as defined herein) filed by Defendant Sean Flynn, which asserts certain claims against River Plaza as well as Esther Geppert, PK Agrawal, Jim Burke, Cheri Lundin, Cary Endlich, Joan Long, Ron Hale, Mark Oberrotman, and Gary Okrusko.

2. The Underlying Action (defined herein) is pending in the Circuit Court of Cook County, Illinois.

3. Plaintiff, CFSIC, issued a commercial general liability policy (the "Policy" as defined herein) to River Plaza as described more fully below.

4. Defendant River Plaza tendered the claims asserted against it in the Underlying Action to CFSIC for a defense and indemnity under the Policy.

5. The scope of coverage available to River Plaza, Esther Geppert, PK Agrawal, Jim Burke, Cheri Lundin, Cary Endlich, Joan Long, Ron Hale, Mark Oberrotman, and Gary Okrusko[1] in connection with the claims asserted against them in the Underlying Action is governed by the terms, conditions, and exclusions of the Policy.

## JURISDICTION AND VENUE

6. Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1).

7. Plaintiff CFSIC is a corporation organized under the laws of the State of Delaware with its principal place of business in Morristown, New Jersey. At all relevant times, CFSIC conducted business in the State of Illinois.

8. Defendant River Plaza is a corporation organized under the laws of the State of Illinois with its principal place of business in Chicago, Illinois.

9. Defendant Esther Geppert is a resident of Chicago, Illinois and citizen of the State of Illinois.

10. Defendant PK Agrawal is a resident of Chicago, Illinois and citizen of the State of Illinois.

---

[1] Esther Geppert, PK Agrawal, Jim Burke, Cheri Lundin, Cary Endlich, Joan Long, Ron Hale, Mark Oberrotman, and Gary Okrusko are collectively referred to as the "Individual Board Defendants."

11. Defendant Jim Burke is a resident of Chicago, Illinois and citizen of the State of Illinois.

12. Defendant Cheri Lundin is a resident of Chicago, Illinois and citizen of the State of Illinois.

13. Defendant Cary Endlich is a resident of Chicago, Illinois and citizen of the State of Illinois.

14. Defendant Joan Long is a resident of Chicago, Illinois and citizen of the State of Illinois.

15. Defendant Ron Hale is a resident of Chicago, Illinois and citizen of the State of Illinois.

16. Defendant Mark Oberrotman is a resident of Chicago, Illinois and citizen of the State of Illinois.

17. Defendant Gary Okrusko is a resident of Chicago, Illinois and citizen of the State of Illinois.

18. Defendant Sean Flynn is a resident of Chicago, Illinois and citizen of the State of Illinois. Plaintiff CFSIC does not assert any claim against Defendant Flynn in the Complaint and Mr. Flynn has been named as a defendant in this action solely as a necessary and indispensable party.

19. Diversity jurisdiction exists because: (a) there is complete diversity of citizenship between Plaintiff CFSIC, on the one hand, and Defendants River Plaza, the Individual Board Defendants, and Mr. Flynn, on the other hand; and (b) the amount in controversy, including the potential costs of defending and indemnifying River Plaza and the Individual Board Defendants with regard to the Underlying Action, exceeds $75,000, exclusive of interest and costs.

20. An actual justiciable controversy exists between CFSIC, on the one hand, and River Plaza, the Individual Board Defendants, and Mr. Flynn, on the other hand, and by the terms provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is invested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

## THE UNDERLYING ACTION

21. On February 8, 2024, Sean Flynn filed a lawsuit captioned *Sean Flynn v. Esther Geppert et al.*, Case No. 2024-CH-00809, filed in the Circuit Court of Cook County, Illinois (the "Underlying Action") against River Plaza and the Individual Board Defendants (collectively, the "Underlying Defendants"). T

22. The complaint in the Underlying Action (the "Complaint") alleges the existence of a long-standing dispute between Mr. Flynn and the Individual Board Defendants with respect to the failure by the Association to comply with their fiduciary duties as required by the Illinois Condominium Property Act, 765 ILCS 605/1 with respect to a complex of condominium units located at 405 W. Wabash Avenue in Chicago, Illinois. A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

23. The Complaint alleges that the Underlying Defendants have continuously refused to comply with timely repairs needed to common elements of the complex which directly impact Mr. Flynn's unit (Unit 3011 and 3012)(the "Unit"). Ex. A, pp. 1-2.

24. The Complaint further alleges that the Underlying Defendants made repeated misrepresentations to Flynn regarding the presence of asbestos in the Unit. Ex. A, p. 2.

25. The Complaint alleges that, within the first three months after moving into the Unit in 2016, there were two significant incidents that damaged the Unit. Ex. A, ¶ 7.

26. The first alleged incident related to another Unit's washing machine overflowing and the second incident related to the fact that building's plumbing was not up to code. Ex. A, ¶ 7.

27. The Complaint alleged that, at the instruction of management and the complex's Board of Directors (the "Board"), maintenance personnel applied duct tape, cardboard, and newspaper in an attempt to fix the leaks resulting from to the overflow of water from another unit's washing machine and buckets were placed within Mr. Flynn's ceiling to prevent water absorption in the walls, as opposed to actually addressing and fixing the plumbing issues. Ex. A, ¶ 8.

28. The Complaint further alleges that, a result of River Plaza's failed attempts to fix the water leaks, Mr. Flynn was frequently displaced from the Unit throughout the last several years despite repeated and numerous requests for the plumbing issues to be addressed and resolved. Ex. A, ¶ 9.

29. The Complaint further alleges that, from when Mr. Flynn purchased the Unit in 2016 to present, continuous construction projects were being performed on other Units within the Building which required access to the ceiling of the Unit. Ex. A, ¶ 10.

30. The Complaint further alleges that in October 2021 construction work at the complex required cutting through dry wall and a riser pipe, and due to the magnitude of exposure to the ceiling, Mr. Flynn requested confirmation that there was no asbestos exposure resulting from the debris caused by River Plaza's construction work. Ex. A, ¶ 12.

31. The Complaint alleges that, following the request, Mr. Flynn was informed that the areas of the complex were thoroughly tested before any work was performed and that those areas contained no asbestos. Ex. A, ¶ 13.

32. The Complaint further alleges that, in light of an emergency maintenance issue wherein River Plaza again needed access to access the Unit, Mr. Flynn subsequently allowed access under the guarantee that River Plaza would hire and pay for asbestos testing. Ex. A, ¶ 14.

33. It is further alleged that the inspector hired by River Plaza determined the presence of asbestos, but River Plaza withheld this information from Mr. Flynn for over six weeks. Ex. A, ¶ 15.

34. The Complaint further alleges that, although River Plaza promised Mr. Flynn that asbestos abatement of the entirety of the Unit would be addressed, such work was never completed because the contractor hired by River Plaza was not licensed to abate asbestos. Ex. A, ¶ 22.

35. The Complaint alleges that, on April 27, 2023, Mr. Flynn was notified by River Plaza of additional construction work that needed to be done on his Unit. Ex. A, ¶ 23.

36. The Complaint further alleges that on May 8, 2023 testing of asbestos was performed on all units in the complex except for the Unit despite repeated demands by Mr. Flynn that his Unit be tested for asbestos. Ex. A, ¶ 24.

37. It is further alleged that, for much of the Spring of 2023, Mr. Flynn was displaced from his Unit for additional air testing. Ex. A, ¶ 25.

38. The Complaint further alleges that, on June 29, 2023, Mr. Flynn was taken on a "walkthrough" of his Unit and additional damage and incomplete work by River Plaza was discovered. Ex. A, ¶ 26.

39. The Complaint further alleged that Mr. Flynn was displaced from his Unit for much of the Summer and Fall of 2023 and is still impacted by River Plaza's action and inaction. Ex. A, ¶ 27.

40. As a result of the foregoing incidents, Mr. Flynn alleges in the Complaint that the damages he has incurred to date as a result of the damage to the Unit and his displacement from the Unit exceed $600,000. Ex. A, ¶ 28.

41. The Complaint asserts two counts against the Underlying Defendants: Count I – Fraud and Count II – Breach of Fiduciary Duty.

42. The Fraud count asserts that, between February 2023 and November 2023, River Plaza knowingly and willfully made false and misleading statements of material facts to Mr. Flynn regarding several issues, including providing fraudulent or misleading accountings of the dates by which construction projects were to be complete; falsified asbestos inspection results provided by a vendor; failed to give a truthful accounting of or protocol regarding asbestos found within the Unit; and providing fraudulent or misleading accounts of the work being done by the vendors. Ex. A, ¶ 30.

43. As a result of River Plaza's fraudulent or misleading accountings, the Complaint alleges that Mr. Flynn was induced to continue living in and near dangerous conditions including, but not limited to, asbestos in the Unit. Ex. A, ¶ 32.

44. The Breach of Fiduciary Duty count asserts that the Underlying Defendants breached the Illinois Condominium Property Act by failing to maintain the common elements of the complex; failing to provide for the employment of personnel necessary for the maintenance of the complex; failing to act in accordance with their fiduciary duties; and failing to reasonably provide for the safety of Mr. Flynn, his family, and his Unit. Ex. A, ¶ 41.

## **THE POLICY**

45. CFSIC issued commercial general liability policy no. GLO-099537 to River Plaza for the August 31, 2023 to August 31, 2024 policy period (the "Policy"). A true and correct copy of the Policy is attached hereto as **Exhibit B**.

46. The Policy provides a per Each Occurrence limit of $1 million with a $2 million general aggregate limit subject to a $5,000 per occurrence deductible. Ex. B, pp. 3, 42.

47. The Policy's Commercial General Liability Coverage Form provides as follows:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

   \* \* \*

   b. The insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; . . .

   \* \* \*

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected Or Intended Injury**

> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

\* \* \*

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   \* \* \*

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your offices or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

\* \* \*

**SECTION V – DEFINITIONS**

\* \* \*

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

\* \* \*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

17. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

**18.**    "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. . . .

* * *

Ex. B, pp. 8-9, 16, 20, 22.

    48.    The Policy contains a Continuous or Progressive Injury and Damage Exclusion endorsement which provides as follows:

This insurance does not apply to:

1.    Any damages arising out of or related to "bodily injury" or "property damage" whether such "bodily injury" or "property damage" is known or unknown,

    (a)    which first occurred in whole or in part prior to the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier); or

    (b)    which are, or are alleged to be, in the process of occurring as of the inception date of the policy (or the retroactive date of this policy, if any; whichever is earlier) even if the "bodily injury" or "property damage" continues during this policy period; or

    (c)    which were caused, or alleged to have been caused, by the same condition(s) or defective construction which first existed prior to the inception date of this policy.

2.    Any damages arising out of or related to "bodily injury" or "property damage" whether known or unknown, which are in the process of adjustment, settlement or "suit" as of the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier).

We shall have no duty to defend any insured against any loss, claim, "suit," or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.

Ex. B, p. 41.

49. The Policy contains an Exclusion – Designated Ongoing Operations and Designated Work endorsement, which provides as follows:

**Schedule**

**Ongoing operations:** Any construction or renovation operations, other than routine maintenance, service or repair of coverage premises.

**Your work**: Any construction or renovation work, other than routine maintenance, service or repair of covered premises.

A. Under **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and **SECTION I – COVERAGES, PRODUCTS/COMPLETED OPERATIONS BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, the following exclusions is added to Paragraph **2. Exclusions**:

This insurance does not apply to "bodily injury" or "property damage":

1. Arising out of the ongoing operations described in the **Schedule** of this endorsement; or

2. Included in the "products-completed operations hazard" and arising out of "your work" described in the **Schedule** of this endorsement.

\* \* \*

Ex. B, p. 52.

50. The Policy contains a Hazardous Materials Exclusion endorsement, which provides as follows:

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions,** and **SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions,** and **SECTION I – COVERAGES, PRODUCTS/COMPLETED OPERATIONS BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** and **SECTION I – COVERAGES BODILY INJURY**

**AND PROPERTY DAMAGE LIABILITY** are amended and the following Exclusion is added:

This insurance does not apply to:

**Hazardous Materials**

**(1)**    "Bodily injury," "property damage" or "personal and advertising injury" arising out of, in any way related to, or which would not have occurred in whole or in part but for the actual, alleged or threatened application, discharge, ingestion, inhalation, dispersal, seepage, migration, release, escape spill, leakage, handling, manufacture, installation, use, sale, removal, distribution, remediation, monitoring, testing, investigation, detoxification, consumption, dermal absorption, disposal, storage, or "advertisement" of, or exposure to, any "hazardous materials" at any time.

**(2)**    Any loss, cost or expense arising out of any:

    **(a)**    Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "hazardous materials"; or

    **(b)**    Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "hazardous materials."

(3)    Any obligations to share damages with or indemnify another party whom must pay damages because of injury or damage relating to "hazardous materials."

(4)    Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with paragraphs (1), (2), or (3) above.

This exclusion applies whether or not such "hazardous materials" have any function in your business, operations, premises, site or location, and whether or not such "hazardous materials" are being used as directed or intended.

      **B.**      **SECTION V- DEFINITIONS** is amended and the following added:

> **"Hazardous materials"** means materials that are radioactive, corrosive, oxidizers, asphyxiates, biohazardous, toxic, pathogenic or allergenic substances or organisms, and includes, but is not limited to, lead, asbestos, silica, glyphosate and materials or products containing them.

Ex. B, p. 53.

## THIS DISPUTE

51. Defendant River Plaza has sought a defense and indemnity from CFSIC under the Policy in connection with the claims asserted against it and the Individual Board Defendants in the Underlying Action.

52. Plaintiff CFSIC has determined through its coverage investigation that it owes no obligation under the Policy to defend or indemnify River Plaza or the Individual Board Defendants in connection with the claims asserted against them in the Underlying Action.

53. Plaintiff CFSIC has advised River Plaza and the Individual Board Defendants in writing that it disclaims any obligation under the Policy to defend and/or indemnify them in connection with the claims asserted against them in the Underlying Action.

54. Plaintiff CFSIC now brings this action to obtain a judicial declaration that it owes no duties under the Policy to defend or indemnify River Plaza or the Individual Board Defendants in connection with the claims asserted against it in the Underlying Action.

## COUNT I
### No Duty to Defend or Indemnify

55. CFSIC incorporates by reference herein paragraphs 1 through 54 as if the same were fully set forth at length.

56. The Insuring Agreement of the Policy provides that CFSIC will pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Ex. B, p. 8.

57. The Policy defines "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." The Policy defines "property damage" to mean "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." Ex. B, pp. 20, 22.

58. The Policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Ex. B, p. 22.

59. In addition, the Insuring Agreement of the Policy states that the insurance only applies if "'bodily injury' or 'property damage' occurs during the policy period." Ex. B, 8.

60. The Complaint alleges that Mr. Flynn's Unit sustained damage due to water intrusion as well as other construction work and that Mr. Flynn was exposed to asbestos as a result of such construction work. Ex. A, ¶¶ 9, 16.

61. To the extent the Complaint does not allege that the Underlying Defendants are liable for "bodily injury" and/or "property damage" caused by an "occurrence", the claims asserted in the Complaint do not fall within the scope of the Insuring Agreement of the Policy and, therefore, no coverage is afforded under the Policy for the claims asserted in the Underlying Action.

62. Section II – WHO IS AN INSURED of the Policy provides, in pertinent, that if "[i]f you are designated in the Declarations as . . . [a]n organization other than a partnership, joint

venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your offices or directors." Ex. B, p. 16.

63. To the extent the Individual Board Defendants do not qualify as "insureds" under the Policy, no coverage is afforded under the Policy for the claims asserted against them in the Underlying Action.

64. To the extent the Complaint could reasonably be construed as satisfying the Insuring Agreement of the Policy, certain exclusions and endorsements contained in the Policy operate to preclude coverage in this matter.

65. The Policy contains a Continuous or Progressive Injury and Damage Exclusion which precludes coverage for "[a]ny damages arising out of or related to 'bodily injury' or 'property damage' whether such 'bodily injury' or 'property damage' is known or unknown . . . which first occurred in whole or in part prior to the inception date of this policy . . . or . . . which are, or are alleged to be in the process of occurring as of the inception date of the policy . . . ." Ex. B, p. 41.

66. The Complaint in the Underlying Action alleges that, after Mr. Flynn purchased the Unit in 2016, he soon suffered significant water incidents that damaged his Unit. Ex. A, ¶ 10.

67. The Complaint further alleges that, as a result of River Plaza's failure to fix such leaks, Mr. Flynn has frequently been displaced from the Unit throughout the last several years. Ex. A, ¶ 9.

68. The Complaint further allege that sometime after October 2021, the Unit tested positive or asbestos. Ex. A, ¶¶ 12-15.

69. It is further alleged that, on June 29, 2023, Mr. Flynn discovered additional damage and incomplete work by River Plaza. Ex. A, ¶ 26.

70. To the extent the Complaint alleges that Mr. Flynn sustained "bodily injury" and/or "property damage", it is alleged to have occurred prior to the inception date of the Policy.

71. To the extent the Complaint alleges "bodily injury" and/or "property damage" during the pendency of the Policy, such "bodily injury" and/or "property damage was in the process of occurring as of the inception date of the Policy.

72. As a result, any alleged "bodily injury" or "property damage sustained by Mr. Flynn squarely falls within the scope of the Policy's Continuous or Progressive Injury and Damage Exclusion.

73. Accordingly, even if the allegations of the Complaint met the requirements of the Insuring Agreement of the Policy, the Policy would not afford coverage to the Underlying Defendants for the claims asserted against them in the Underlying Action due to the operation of the Continuous or Progressive Injury and Damage Exclusion.

74. The Policy also contains an Exclusion – Designated Ongoing Operations and Designated Work endorsement (the "Designated Work Exclusion") which precludes coverage for "bodily injury" or "property damage" arising out of ongoing operations and your work described in the **Schedule.** The Schedule states that ongoing operations and your work refers to "[a]ny construction or renovation operations, other than routine maintenance, service or repair of covered premises." Ex. B, p. 52.

75. The Complaint alleges Mr. Flynn sustained damages as a result of multiple construction projects at the complex which began in 2016, including construction work in October 2021 and the Spring of 2023. Ex. A, ¶¶ 10, 12, 23-25.

76. As a result, any alleged "bodily injury" or "property damage sustained by Mr. Flynn squarely falls within the scope of the Policy's Designated Work Exclusion.

77. Accordingly, even if the allegations of the Complaint met the requirements of the Insuring Agreement of the Policy, the Policy would not afford coverage to the Underlying Defendants for the claims asserted against them in the Underlying Action due to the operation of the Designated Work Exclusion.

78. The Policy also contains a Hazardous Materials Exclusion, which precludes coverage for "bodily injury" and "property damage" arising out of the "actual, alleged or threatened application, discharge, ingestion, inhalation, dispersal, seepage, migration, release, escape spill, leakage, handling, manufacture, installation, use, sale, removal, distribution, remediation, monitoring, testing, investigation, detoxication, consumption, dermal absorption, disposal, storage, or 'advertisement' or, or exposure to, any 'hazardous materials' at any time." Ex. B, p. 53.

79. The Hazardous Materials Exclusion defines "hazardous materials" to mean "materials that are radioactive, corrosive, oxidizers, asphyxiates, biohazardous, toxic, pathogenic or allergenic substances or organisms, and includes, but is not limited to . . . asbestos . . . ." Ex. B, p. 53.

80. The Complaint alleges that the Underlying Defendants failed to abate the asbestos in Mr. Flynn's Unit and, as a result, Mr. Flynn was exposed to asbestos. Ex. A, ¶¶ 16, 22.

81. The Hazardous Materials Exclusion of the Policy specifically defines "hazardous materials" to include asbestos. Ex. B, p. 53.

82. As a result, any alleged "bodily injury" or "property damage sustained by Mr. Flynn squarely falls within the scope of the Policy's Hazardous Materials Exclusion.

83. Accordingly, even if the allegations of the Complaint met the requirements of the Insuring Agreement of the Policy, the Policy would not afford coverage to the Underlying

Defendants for the claims asserted against them in the Underlying Action due to the operation of the Hazardous Materials Exclusion.

84. The Policy contains an Expected or Intended Injury Exclusion which precludes coverage for "'[b]odily injury" or "property damage" expected or intended from the standpoint of the insured." Ex. B, p. 9.

85. The Complaint alleges that the Underlying Defendants failed to abate Mr. Flynn's Unit of asbestos and falsified asbestos inspection reports. Ex. A, ¶¶ 22, 30.

86. The Complaint further alleges that, as a result of the Underlying Defendants' knowing and willful conduct, Mr. Flynn was exposed to asbestos. Ex. A, ¶¶ 30, 32.

87. Accordingly, even if the allegations of the Complaint met the requirements of the Insuring Agreement of the Policy, the Policy would not afford coverage to the Underlying Defendants for the claims asserted against them in the Underlying Action due to the operation of the Expected or Intended Injury Exclusion.

WHEREFORE, Plaintiff CFSIC seeks a judgment that owes not duty under the Policy to defend or indemnify the Underlying Defendants in connection with the claims asserted against them in the Underlying Action.

**PRAYER FOR RELIEF**

Plaintiff, Crum & Forster Specialty Insurance Company, hereby respectfully request the entry of an order and judgment in its favor and against River Plaza Homeowners Association, the Individual Board Defendants, and Sean Flynn declaring as follows:

a. This court has jurisdiction over the parties and the subject matter of this litigation;

b. The Policy does not provide coverage to River Plaza Homeowners Association and the Individual Board Defendants for the claims asserted against them in the Underlying Action;

c. Crum & Forster Specialty Insurance Company does not owe a duty under the Policy to defend River Plaza Homeowners Association and the Individual Board Defendants in connection with the claims asserted against them in the Underlying Action;

d. Crum & Forster Specialty Insurance Company does not owe a duty under the Policy to indemnify River Plaza Homeowners Association and the Individual Board Defendants in connection with the claims asserted against it in the Underlying Action;

e. Crum & Forster Specialty Insurance Company is entitled to an award of its costs; and

f. Such other further relief as this Court deems just and appropriate.

Dated: May 14, 2024

                        Respectfully Submitted,

By:   */s/ James J. Hickey*
James J. Hickey, Atty. No. 6198334
Colin B. Willmott, Atty. No. 6317451
James.Hickey@kennedyslaw.com
Colin.Willmott@kennedyslaw.com
KENNEDYS CMK
30 S. Wacker Drive, Suite 3650
Chicago, IL 60606
Phone: (312) 800-5029
Fax: (312) 207-2110

*Attorneys for Crum & Forster Specialty Insurance Company*